IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| MICHAEL J. SONNIER II | § | |
| v. | § | CIVIL ACTION NO. 5:23cv96 |
| WARDEN, FCI-TEXARKANA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Petitioner, Michael Sonnier filed this application for the writ of habeas corpus under 28 U.S.C. § 2241 challenging the computation of his sentence. The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and Local Rule CV-72 of the Local Rules of Court for the Eastern District of Texas.

**I. The Petitioner's Application for Habeas Corpus Relief**

Petitioner states that on November 1, 2013, he pleaded guilty in the Western District of Louisiana to child pornography charges and received a sentence of 10 years in prison. A year and a half later, on March 15, 2015, Petitioner pleaded guilty in state court to charges of indecent behavior with juveniles and received a ten-year sentence. The state judge ordered that the sentence be served concurrently with the previously imposed federal sentence.

Petitioner states that he remained in state custody until December 12, 2022, the date he satisfied his state sentence. He was then transferred into federal custody and ultimately ended up in the federal correctional institution in Texarkana, where he was at the time of filing his petition.

On August 16, 2022, Petitioner says that while in state custody, he sent a request for *nunc pro tunc* designation and a memorandum in support to the South Central Regional Office of the Federal Bureau of Prisons, but by the time his state sentence expired in December, he had not received a response.

Shortly after arriving at FCI-Texarkana on February 16, 2023, Petitioner states that he sent a letter to the South Central Regional Office asking about his August 2022 request. On March 22, 2023, he received a response from the Warden of FCI-Texarkana telling him that his *nunc pro tunc* request was being reviewed. He asked his case manager the next day about it, and she told him that a "Barden letter" had been mailed to the federal sentencing court, asking if the sentencing court intended his sentence to run consecutively or concurrently with any state sentences.[1] (Dkt. No. 1-4, p. 1). The sentencing court responded that its recommendation was for the federal sentence to run consecutively to the state sentence. (Dkt. 1-6, p. 1).

On May 3, 3023, after the 60-day response period had expired, Petitioner states that he mailed a second letter of inquiry to the South Central Regional Office asking about his *nunc pro tunc* request. On May 20, 2023, his case manager gave him a letter dated March 19 informing him that the Bureau had denied the *nunc pro tunc* designation based upon factors 2, 3, and 4 of 18 U.S.C. § 3621(b), with factor 2 being the offense, factor 3 being Petitioner's prior criminal history, and factor 4 being the sentencing court's recommendation. (Dkt. No. 1-6, p. 1).

On June 1, 2023, Petitioner states that he filed an appeal to the General Counsel appealing the decision of the South Central Regional Office. On July 7, 2023, he received notice that the appeal to the General Counsel had been rejected for two reasons - first, because he had to file a unit-level request through the warden before he could file an appeal at the General Counsel level, and second, because he could only submit one continuation page, the equivalent of one letter-size paper with legible text on one side. (Dkt. No. 1-7, p. 3).

On July 11, 2023, Petitioner stated that he re-submitted his appeal to the General Counsel, in which he said that he did not have to file a unit-level request under the exceptions clause of 28 C.F.R. 542.14(d)(5) and that he had revised his continuation page to be one-sided text only. This

---

[1] A "Barden letter" is a letter from the Bureau of Prisons to the sentencing court inquiring as to whether the court intended that the sentence run concurrently or consecutively to a state sentence. *See Barden v. Keohane*, 921 F.2d 476, 483 (3rd Cir. 1990).

appeal was again rejected because he had to file a unit-level request and, upon receipt of that response, file an appeal at the regional level. (Dkt. No. 1-8, p. 3).

In his habeas petition, Petitioner first objects to the Bureau's use of the nature of the offense as a factor in denying a *nunc pro tunc* designation, saying that the Bureau only considered the offense at face value and did not consider any mitigating circumstances, such as the fact that he was a first-time offender, the sentencing court did not regard him as the worst-type offender, the Government did not move for an upward departure, and he expressed great remorse while accepting responsibility for the offense.

Next, Petitioner complains that the Bureau did not consider such other factors as his continuous rehabilitative efforts, achievements, and accomplishments during his incarceration, including completion of a programs for healing and eliminating abusive relationships and a program for substance abuse and addiction, a faith-based living program, and educational and vocational programs, and has earned certificates from the Occupational Safety and Health Administration, the National Center for Construction Education and Research, the National Safety Council, and the American Heart Association. He states that he has also completed a professional resume writing class and is on the waiting list for the Heating, Ventilating, and Air Conditioning course.

Petitioner states that he has a clean disciplinary record, he has served as a dorm captain, and he taught and instructed the adult education course while in state custody at Catahoula, Louisiana. He also served as the chaplain's assistant at Catahoula. After being transferred to the Richland Parish Correctional Center, he served as an inmate counselor and law librarian. Petitioner argues that the Bureau of Prisons should have considered these efforts at rehabilitation and demonstrating trustworthiness.

Next, Petitioner says that the third reason given by the Bureau was the statement by the sentencing court recommending that the sentence be consecutive. However, Petitioner states that the letter was answered by the Chief Judge of the Western District, Terry Doughty, not the sentencing judge, Patricia Minaldi (who passed away in 2018). Because Judge Doughty was not the

sentencing judge, Petitioner argues that the Bureau should not have accepted his recommendation or considered it applicable.

Petitioner states that the Barden letter said that if the court indicates that the federal sentence is to be concurrent with any state sentences, the Bureau will commence the sentence on a date that will result in the satisfaction of the federal sentence and Petitioner's release from confinement, but if the court indicates that the sentence is to be consecutive, Petitioner will continue to a presumptive release date of May 28, 2031. Dkt. No. 1-4, p. 2. According to Petitioner, this sentence indicates that the Bureau has effectively delegated its discretion to a non-sentencing judge and has ceded veto power over its decision to the court. He contends that the Bureau appeared to have been unsure as to the decision and thus chose to rely solely on the court, which he says is an abuse of discretion.

In reviewing these factors, Petitioner argues that the Bureau failed to consider the fifth factor of 18 U.S.C. § 3621(b)(5), which is "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28." He states that Section 5G1.3 of the U.S. Sentencing Guidelines says that if a state term of imprisonment is anticipated from another offense that is relevant conduct to the instant offense of conviction, the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment. Petitioner argues that the application of § 3621 is mandatory and that the Bureau erred in failing to apply section (b)(5).

While Petitioner admits that sentences imposed at different times normally run consecutively, Petitioner asserts that this does not apply to not-yet-imposed state sentences. He says that the Bureau is expected to give consideration to the state court's determination, which was that the sentences should be concurrent. Petitioner argues that support of a concurrent sentence, in this case, is plenary and that to impose a consecutive sentence by presumption or through a non-sentencing judge's recommendation would be contrary to case law, to the current views of the criminal justice system, and to the preference and order of the Louisiana state court. He asks that the Court order his immediate release based on the facts presented, with special consideration given to the Bureau's actions and omissions, which he believes caused the Bureau to violate his due process rights throughout the *nunc pro tunc* procedure, including preventing him from exhausting

4

his administrative remedies.

## II. The Respondent's Motion to Dismiss

The Respondent contends that although Petitioner did not fully comply with the exhaustion process through the Bureau of Prisons' Administrative Remedy Program, the Court should nonetheless deny Petitioner's petition on the merits. The Respondent states that in light of the Supreme Court's decision in *Setser v. United States*, 566 U.S. 231 (2012), and the default rules of 18 U.S.C. § 3854(a), the Bureau is required to run Petitioner's federal sentence consecutive to his later-imposed state sentence. The Respondent also says that the Bureau's exercise of its designation authority under 18 U.S.C. § 3621 (b) is "not reviewable by any court" under that statute and that the Bureau of Prisons considered Petitioner's request for a *nunc pro tunc* designation and exercised its discretion to deny it in light of the position taken by the sentencing court and the other factors of § 3621(b).

According to the Respondent, Petitioner was first arrested on child pornography charges by state authorities in Calcasieu Parish, Louisiana, on October 16, 2012. He was held in state custody until November 8, 2012, when the State of Louisiana deferred prosecution in favor of federal prosecution and released him on bail.

While free on bail, Petitioner was arrested by state authorities on December 12, 2012, on charges of aggravated incest, which conduct predated and was unrelated to the child pornography charges. He was held in state custody pending prosecution on these charges.

On April 23, 2013, while remaining in state custody, Respondent says that Petitioner was transferred to a U.S. Marshals Service facility on a writ of habeas corpus *ad prosequendum* to face federal charges related to the state child pornography arrest. On November 1, 2013, he was sentenced in the Western District of Louisiana for federal child pornography charges, but the judgment was silent concerning the relation of the federal sentence to the anticipated state sentence.

After sentencing, the Respondent says that the Marshals Service returned the Petitioner to Louisiana state authorities, and he remained in the custody of the Calcasieu Parish Sheriff pending resolution of his state charges.

On March 16, 2015, Petitioner pleaded guilty in state court to an amended charge of one count of indecent behavior with a juvenile under the age of 13, receiving a sentence of 10 years in prison. The state judge recommended that the sentence run concurrent with the unrelated federal sentence and ordered that Petitioner receive credit for time previously served on his 10-year sentence. Petitioner was transferred to Louisiana state prison, where he remained until he was released on parole on December 13, 2022.

At that time, the Respondent explains that Petitioner was taken into federal custody and began serving his federal sentence. He received credit for the 23 days he spent in custody on the related state child pornography charges, and all other time he spent in state custody was credited to his Louisiana sentence for indecent behavior with a juvenile under the age of 13.

Petitioner wrote to the Bureau of Prisons asking that the state prison be retroactively designated for concurrent service of his federal sentence. The Respondent states that on February 28, 2023, the Bureau notified Petitioner that his request would be received and processed under Bureau Program Statement 5160.05 concerning the designation of state institutions for service of a federal sentence, which requires the Bureau to contact the sentencing court for its position on concurrent service.  The Bureau contacted the sentencing court, addressing the letter to Chief Judge Doughty because the sentencing judge was deceased. Judge Doughty responded by saying that Petitioner's state sentence for indecent behavior with a juvenile under the age of 13 was not relevant conduct to the federal offense, had no bearing or impact on the sentencing guidelines for the federal sentence, involved separate victims, and was already pending at the time of Petitioner's federal indictment. Consequently, Judge Doughty recommended that the federal sentence run consecutively to the state sentence.  Upon receiving this response, the Bureau reviewed Petitioner's request under the criteria set out in § 3621(b) and issued a final determination denying the request.

The Respondent explains that when a federal sentence follows a state sentence, and the federal court intends for the sentence to run concurrent with the state sentence, the Bureau will give effect to this intent by designating the state prison for service of the federal sentence. This is because Congress has prohibited the Bureau from applying to a federal prison sentence any credit for time a prisoner spent in official detention prior to the date his federal service commenced if that time has been credited to another sentence. 18 U.S.C. § 3585(b).

The Respondent argues that according to 18 U.S.C. § 3584(a), if multiple terms of imprisonment are imposed on a defendant at the same time or if a term of imprisonment is imposed on a defendant already subject to an undischarged term of imprisonment, the terms can run concurrently or consecutively (except that terms cannot run consecutively for an attempt and an offense which was the sole objective of the attempt). Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that they run consecutively, while multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently. Only the district court can decide whether a federal sentence is to run concurrently or consecutively with a state sentence that has not yet been imposed. *Setser v. United States*, 566 U.S. 231, 237-39 (2012). The sentences are presumed to run consecutively unless the court specifies that they are to be concurrent. *United States v. Eiland*, 711 F.App'x 730, 731 (5th Cir. 2017).

As a result, the Respondent states that the Bureau of Prisons has implemented Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence. This program statement provides in pertinent part that a designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system. Information reviewed will include the inmate's disciplinary history, institutional adjustment, recommendations of the wardens at the state and federal institutions, the recommendation of the prosecuting U.S. Attorney, the intent of the sentencing court if available, and any other pertinent information regarding the inmate. (Dkt. No. 12-1, p. 68).

The Program Statement goes on to explain that where an inmate requests pre-sentence credit towards a federal sentence for time spent in service of a state sentence as a request for a *nunc pro tunc* designation. Where the federal sentence was imposed first, and there was no order or recommendation regarding the federal sentence in relation to a future state sentence, the Bureau will send a letter to the sentencing court inquiring if there are any objections (i.e., to designating the state institution as the place for service of the federal sentence, effectively running the sentences concurrently). If the sentencing judge is no longer available, the inquiry is directed to the judge assigned to the case. (Dkt. No. 12-1, pp. 70-71).

While Petitioner points to § 5G1.3(c) of the U.S. Sentencing Guidelines as saying that where a state term of imprisonment is expected to result from another offense which is relevant conduct to the instant offense of convition, the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment, the Respondent contends that the offense conduct in Petitioner's state offense of indecent behavior with a juvenile under the age of 13 was not relevant conduct to the child pornography offense, rendering this subsection inapplicable.

Respondent asserts that the Bureau conducted a thorough review of Petitioner's request for a *nunc pro tunc* designation. Although Petitioner contends that the Bureau "abdicated its statutory authority" by delegating its responsibility to a non-sentencing judge, Respondent argues that *Setser* makes clear it is the court, not the Bureau, which determines whether sentences are consecutive or concurrent. Respondent also states that contacting the chief judge of the Western District of Louisiana was proper because the sentencing judge had passed away, and Rule 25(b) of the Federal Rules of Criminal Procedure provides that any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot complete those duties because of absence, sickness, death, or other disability.

Finally, the Respondent argues that while Plaintiff complains about how the administrative remedy program was administered, this does not afford him a basis for relief because he has no protected liberty interest in the grievance procedure. In any event, the Respondent notes that he is

8

asking the Court to decide the petition on the merits, rather than on any failure to exhaust administrative remedies.

**III. Petitioner's Response to the Motion to Dismiss**

In his response to the motion to dismiss, Petitioner states that he opposes four contentions by the Respondent: (1) that the Court should deny the petition based on *Setser* and the presumption in 18 U.S.C. §3584 that multiple terms of imprisonment run consecutively unless the court orders that they be concurrent; (2) that decisions made by the Bureau of Prisons under § 3621(b) are not reviewable; (3) that Judge Doughty was the lawful successor of Judge Minaldi; and (4) that the Bureau of Prisons did not abuse its discretion in denying Petitioner's request for a *nunc pro tunc* designation.

Petitioner embarks upon a lengthy discussion of *Setser*, in which he contends that the case does not apply retroactively with regard to an anticipated state sentence but only at or during the sentencing phase. He argues that a state sentence that has not yet been imposed does not qualify as a "multiple term of imprisonment" before a federal sentence is imposed. Petitioner asserts that *Setser* did not abolish the Bureau's *nunc pro tunc* procedure but endorsed it and urged the petitioner in that case to use it.

According to Petitioner, the district court "had a right to remain silent" with regard to the question of consecutive or concurrent, and by doing so, it executed forbearance to the state court. Because the state court ordered the sentences to be concurrent, Petitioner maintains that this made him "even more eligible" for a *nunc pro tunc* designation.

Petitioner next takes issue with the Respondent's assertion that the Bureau's decision is not reviewable by any court under § 3621(b). As discussed below, this Court does not credit that assertion by the Respondent.

Third, Petitioner asserts that the Bureau improperly contacted Judge Doughty as successor to Judge Minaldi because, at the time that Judge Minaldi took a leave of absence in 2014, Judge Doughty was not yet on the federal bench, but was a state district judge in Louisiana. He also

9

contends that Judge Doughty did not succeed Judge Minaldi but rather Judge Robert James upon ascending to the federal bench and that Judge Doughty sits in the Monroe Division rather than the Lake Charles Division. Thus, Petitioner argues that Judge Doughty could not be the lawful successor to Judge Minaldi.

In addition, Petitioner asserts that providing what he terms a "non-binding, extra-judicial recommendation" with regard to his place of imprisonment does not constitute "completing the court's duties" under Rule 25 because the Bureau of Prisons may not always abide by the judge's recommendation. He also contends that if a non-successor judge can provide a recommendation, this would mean that the Bureau could solicit the opinion of any judge in the district. He again complains that the Bureau improperly found that Judge Doughty was a lawful successor to Judge Minaldi before being appointed to the federal bench and asserted that providing a recommendation regarding the place of imprisonment to the Bureau a decade after the imposition of the sentence should not constitute "completing the court's duties."

Petitioner further opposes the Respondent's contention that the Bureau gave a thorough review to his request for a *nunc pro tunc* designation. Rather, Petitioner maintains that the Bureau placed the full weight of the outcome on the recommendation of the non-sentencing judge. He cites *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016), in which the Ninth Circuit determined that the district court erred by dismissing the petition for want of jurisdiction and directed that the district court order the Bureau of Prisons to reconsider the prisoner's *nunc pro tunc* application without considering a letter from a judge who was not the sentencing judge but who in fact had been formally recused from the case due to an actual conflict, in that he had a connection to the victim of the crime. Petitioner argues that there were two separate errors in this case - (1) consideration of a letter from a non-sentencing judge (2) who had been recused from the case.

Petitioner also complains that the Bureau did not conduct a thorough review because it did not consider his rehabilitative efforts. He states that education, employability, and family support should all be considered in this review. Finally, Petitioner states that he is not asserting a liberty

10

interest in the grievance procedure but in the *nunc pro tunc* procedure itself. He asks that the Court deny the motion to dismiss and grant his petition for habeas corpus relief.

Petitioner has also filed a 67-page motion for partial summary judgment, which exceeds the page limitations set out in Local Rule CV-7 of the Local Rules of Court for the Eastern District of Texas. Motions for summary judgment are disfavored if not inappropriate means of adjudicating habeas corpus petitions. *See Browder v. Illinois Department of Corrections*, 434 U.S. 257, 269 n. 14 (1978). In any event, Petitioner's motion essentially repeats the arguments made in the petition for habeas corpus relief.

## IV. Discussion

Petitioner's habeas corpus petition seeks review of the Bureau of Prisons' decision on his request for a *nunc pro tunc* designation of the state prison as the place of service of his federal sentence, which would effectively make his state and federal sentences concurrent.

The Fifth Circuit has stated that under federal law, multiple terms of imprisonment imposed at different times are presumed to run consecutively unless the district court specifically orders that they run concurrently. *Hunter v. Tamez*, 622 F.3d 427, 431 (5th Cir. 2010); *Potoski v. Fox*, 583 F.App'x 396, 397 (5th Cir. 2014). A district court may impose a consecutive sentence even though the defendant has not yet been sentenced in state court. *Setser*, 566 U.S. at 244-45; *United States v. Jack*, 566 F.App'x 331, 332 (5th Cir. 2014).

Under 18 U.S.C. § 3621, the Bureau may indirectly award credit for time served in state prison by designating *nunc pro tunc* the state prison as the place where the prisoner serves a portion of his federal sentence. *Pierce v. Holder*, 614 F/3d 158, 160 (5th Cir. 2010). When a prisoner submits a request for a *nunc pro tunc* designation, the Bureau reviews the request in light of the factors set forth in § 3621, including (1) the resources of the facility contemplated, (2) the nature and circumstances of the offense, (3) the history and characteristics of the prisoner, (4) any statement by the court which imposed the sentence, and (5) any pertinent policy statements issued by the U.S. Sentencing Commission. The Bureau will only make such a designation when it is consistent with

the intent of the sentencing court or the goals of the criminal justice system, as set out in BOP Program Statement 5160.05.

That Program Statement also specifies that when the sentencing court is silent on the matter, the Bureau may contact the court to determine the court's position on whether the sentence should be concurrent or consecutive. The decision of whether to designate a state facility as a place of federal detention is at the Bureau's discretion, and the federal courts cannot lightly second-guess a deliberate and informed determination by the agency charged with administering the federal policy. *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (5th Cir. 2005).

Respondent first states that under 18 U.S.C. § 3621(b), the Bureau's designation of a place of imprisonment is not reviewable by any court. However, as Respondent concedes (Dkt. No. 12 at 16-17), courts have reviewed denials of *nunc pro tunc* requests on an abuse of discretion standard. *See Rodriguez v. Pitzer*, 76 F.App'x 519, 520 (5th Cir. 2003); *Lewis v. Warden, FCC Beaumont*, 819 F.App'x 211, 214 (5th Cir. 2020). To the extent that Respondent argues that the denial of a nunc pro tunc request is unreviewable, this claim is not supported by Fifth Circuit case law.

In reviewing Petitioner's request, the Bureau contacted the chief judge of the sentencing court, as the judge who had sentenced Petitioner had passed away. The chief judge advised the Bureau that the state charge was not relevant conduct to the federal charge, it had no bearing or impact on the guideline determination, and the victims associated with the offense were different; thus, the chief recommended a consecutive sentence. (Dkt. No. 12-1, p. 55).

Although Petitioner argues that contacting a non-sentencing judge was improper, Rule 25 of the Federal Rules of Criminal Procedure states that after a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability. The phrase "the court's duties" includes answering the Bureau's inquiry concerning the consecutive or concurrent nature of the sentence. *Cf. United States v. Dowd*, 451 F.3d 1244, 1256 (11th Cir. 2006); *United States v. Bourgeois*, 950 F.2d 980, 988 (5th Cir. 1992). Plaintiff has failed to show

substantial error in the fact that the Bureau contacted the chief judge of the district after the sentencing judge had passed away.

A worksheet listing the factors under § 3621 shows that the Bureau considered the factors in reviewing Petitioner's request. (Dkt. No. 12-1, p. 58). Factor 1 showed that Petitioner was in the custody of the Federal Correctional Institution at Texarkana, with a security level of Low.[1] Factor 2 noted Petitioner's state and federal convictions and stated that the charges were not related. Factor 3 showed that Petitioner had no other convictions and no disciplinary history within the Bureau of Prisons. Factor 4 noted the court's recommendation for a consecutive sentence. Factor 5 was listed as not applicable. The final determination is listed as "Deny" based on a review of all factors. *Id.*

The district court may review a challenge to the Bureau's refusal to make a *nunc pro tunc* determination through a habeas petition under 28 U.S.C. § 2241. *Pierce*, 614 F.3d at 160. The Bureau's decision is entitled to substantial deference and can be overturned only upon a showing that the agency abused its discretion. *Johnson v. Myers*, civil action no. 19-cv-241, 2019 WL 1645679 (W.D.La., March 13, 2019), *Report adopted at* 2019 WL 1645638 (W.D.La., April 16, 2019); *Branch v. Pearce*, civil action no. 1:14cv684, 2015 WL 3936166 (W.D.Tex.), *aff'd* 669 F.App'x 774 (5th Cir. 2016).

Petitioner has failed to show an abuse of discretion on the part of the Bureau. The record shows that his request was reviewed under the factors set out in § 3621 and denied. Significantly, the record before the Court also shows Petitioner's state offense was not relevant conduct to his federal crime. Specifically, he was convicted of possession of child pornography in federal court. At sentencing, the Assistant U.S. Attorney did advise the federal court that Petitioner had been charged in state court with aggravated incest ( *Sonnier*, Cause No. 2:13cr59; Dkt. No. 31, pp. 5-6 (W.D. La.), but there is no indication that fact was considered in determining his federal sentence. Likewise,

---

[1] The statute's language suggests that this factor should have instead focused on the Louisiana state prison rather than the federal facility. *See* 18 U.S.C. § 3621 ("The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering – (1) the resources of the facility contemplated[.]"). Regardless, neither side argues the outcome would have been different had this factor considered the state prison.

13

the factual basis for Petitioner's guilty plea in federal court stated that Petitioner downloaded child pornography from the internet; it did not discuss activity that supported his state court conviction of aggravated incest. *United States v. Sonnier,* Cause No. 2:13cr59; Dkt. No. 24-3, pp. 1-2 (W.D. La.).

The Fifth Circuit has explained that the default rule is that unrelated crimes should ordinarily receive distinct punishments. *United States v. Valdez*, 726 F.3d 684, 698 (5th Cir. 2013). Consecutive sentencing is an appropriate mechanism for imposing distinct punishments for separate criminal acts, and a defendant has no right to have concurrent sentences imposed for two unrelated offenses. *United States v. Olivares-Martinez*, 767 F.2d 1135, 1137 (5th Cir. 1985).

This principle appears in U.S. Sentencing Guideline § 5G1.3, which provides that if an anticipated state term of imprisonment is expected to result from relevant conduct to the federal offense, the federal sentence shall be imposed to run concurrently with the anticipated state sentence. In other cases, such as Petitioner's, the federal sentence may be imposed to run concurrently, partially concurrent, or consecutively to the state sentence.

Petitioner's criticisms of the Bureau's analysis do not show an abuse of discretion. Petitioner contends that the Bureau improperly used the nature of his offense as a factor in denying his request, stating that the Bureau did not consider mitigating circumstances such as his status as a first-time offender, the fact that the Government did not seek an upward departure, and the remorse he expressed at sentencing. The § 3621(b) worksheet states that Petitioner had no prior convictions and no disciplinary record, indicating that these were considered by the Bureau (Dkt. No. 12-1, p. 58). The fact that the Bureau may not have given them controlling weight does not show an abuse of discretion.

Petitioner also complains that the Bureau ceded its authority by making the sentencing judge's recommendation the determinative factor. He refers to a paragraph in the Barden letter which states that if the court indicates the sentence is to run concurrently, the Bureau would commence the sentence on a date that would result in Petitioner's release, and if the court indicates that the sentence is to run consecutively, then Petitioner would continue to a presumptive release

date of May 28, 2031 (Dkt. No. 12-1, p. 52). While that paragraph suggests the Court's recommendation would be the sole and determining factor, which is consistent with language found in *Sester*,[2] the Bureau nonetheless followed the steps outlined in Program Statement 5160.05, which guides the exercise of the Bureau's discretion under § 3621(b) factors. *See, e.g.*, Dkt. No. 12-1, p. 55 (identifying and addressing *all* the § 3621 factors); *see also* Dkt. No. 12 at 16-18 (identifying the Bureau's efforts to determine whether to grant Petitioner's *nunc pro tunc* request). Petitioner has failed to show an abuse of discretion in this regard.

Similarly, Petitioner asserts that the Bureau should have given weight to the state court's declaration that his state sentence would be concurrent. The state court's determination that a state sentence should run concurrently with a federal sentence is not binding on the United States. *Reescano v. United States*, 349 F.App'x 951, 952 (5th Cir. 2009) (citing *Leal v. Tombone*, 341 F.3d 427, 428-30 5th Cir. 2003)). Likewise, the decision of the state court is not a factor that the Bureau is obligated to consider under § 3621. Petitioner has failed to show an abuse of discretion in this regard.

While Petitioner points to his commendable efforts at rehabilitation, he has failed to show that the Board abused its discretion by denying his request despite his impressive record of achievements. *See generally Estrada v. Tamez*, civil action no. 4:12cv245, 2012 WL 4458689, at *5 (N.D.Tex., August 20, 2012), *Report adopted at* 2012 WL 4458407 (N.D.Tex., September 26, 2012) (rejecting habeas petition seeking *nunc pro tunc* designation despite the prisoner's efforts at rehabilitation). Because Petitioner has not shown an abuse of discretion, his petition for habeas corpus relief is without merit. *Hickman v. Chandler*, 370 F.App'x 527, 528 (5th Cir. 2010).

## RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus

---

[2] *See, e.g.*, *Setser*, 566 U.S. at 238, n.3 (explaining that the application of 3584(a)'s requirement that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently" does not depend on the "'discretion' of the Bureau").

be dismissed with prejudice.

A copy of these findings, conclusions, and recommendations shall be served to all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 11th day of July, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE