IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| MICHAEL J. SONNIER II<br><br>　Petitioner<br><br>v.<br><br>WARDEN, FCI-TEXARKANA<br><br>　Respondent | §<br>§<br>§<br>§<br>§　Case No. 5:23-cv-96-RWS-JBB<br>§<br>§<br>§<br>§ |

## ORDER

Petitioner Michael Sonnier, proceeding *pro se*, filed the above-styled and numbered petition for the writ of habeas corpus under 28 U.S.C. § 2241 complaining of the refusal by the Federal Bureau of Prisons to designate a state institution as the place of service of a portion of his federal sentence. Docket No. 1. The case referred to the United States Magistrate Judge in accordance with 28 U.S.C. § 636.

## BACKGROUND

Petitioner pleaded guilty to child pornography charges in the Western District of Louisiana on November 1, 2013, receiving a sentence of 120 months in prison. Docket No. 1 at 22. On March 15, 2015, he pleaded guilty in the Fourteenth Judicial District Court of Louisiana to charges of indecent behavior with juveniles, receiving a ten-year sentence. *Id.* The state judge ordered that this sentence run concurrently with Petitioner's federal sentence. *Id.* Petitioner remained in state custody until December 12, 2022, when he was transferred into federal custody upon satisfaction of his state sentence. *Id.* at 21–22.

On August 16, 2022, while still in state custody, Petitioner sent a request for a *nunc pro tunc* designation of the state facility as the location for service of his federal sentence to the South Central

Regional Office of the Federal Bureau of Prisons, but by the time his state sentence expired in December, he had not received a response. *Id.* at 23.

Petitioner arrived at the Federal Correctional Institution in Texarkana in February of 2023 and wrote to the South Central Regional Office asking about his request from the previous August. *Id*. On March 22, 2023, he received a response from the Warden telling him that his request was being reviewed. *Id.* at 23–24. Petitioner asked his case manager about it the next day and she told him that a letter, known as a "Barden letter," had been sent to the federal sentencing court asking if the court intended his federal sentence to run consecutively or concurrently with any state sentences. *Id.* at 24.

On May 3, 2023, Petitioner again wrote to the South Central Regional Office asking about his *nunc pro tunc* request. *Id*. On May 20, 2023, his case manager gave him a letter dated March 19, 2023, informing him that the Bureau had denied his *nunc pro tunc* request based on factors 2, 3, and 4 of 18 U.S.C. § 3621(b). *Id*. These factors included Petitioner's offense, his criminal history, and the sentencing court's recommendation that the federal sentence run consecutively to the state sentence. *See id.*; *see also* Docket No. 1-6.

Petitioner filed an appeal of this decision to the General Counsel of the Federal Bureau of Prisons. Docket No. 1 at 24. On July 7, 2023, however, he received notice that the appeal had been rejected because of formatting issues. *See id.* at 25. He resubmitted his request on July 11, stating that he did not have to file a unit-level request under 28 C.F.R. § 542.14(d)(5) and that he had revised his continuation page. *Id.* This appeal was again rejected on the basis that he had to file a unit-level request and then appeal that decision to the regional office prior to appealing to the General Counsel. *Id.*

I.  **The Habeas Petition**

In his habeas petition, Petitioner argues that the Bureau obstructed him from exhausting his administrative remedies. Docket No. 24 at 25–27. He first objects, arguing the Bureau erred in considering the nature of his offense as a factor, stating that the Bureau only considered the offense at face value and did not consider any mitigating circumstances. *Id.* at 28–29. He also complains that the Bureau did not consider other factors such as his rehabilitative efforts, achievements, and accomplishments or his clean disciplinary record. *Id.* at 30–36.

Petitioner separately complains that the Barden letter sent to the sentencing court was not answered by the sentencing judge, Patricia Minaldi. *Id.* at 37–42. Instead, the Chief Judge of the Western District of Louisiana, Terry Doughty, answered the letter because Judge Minaldi was no longer assigned the case at the time of the Barden letter. *See* Docket Nos. 12-1 at 51.[1] Petitioner contends that because Judge Doughty had not been the sentencing judge, the Bureau should not have accepted his recommendation or considered it applicable. Docket No. 37–42. Petitioner argues that the reasoning in the Barden letter shows that the Bureau had effectively delegated its discretion to a non-sentencing judge and had ceded veto power over its decision to the court. *See id.*

Petitioner further argues that under Section 5G1.3 of the U.S. Sentencing Guidelines, if a state term of imprisonment is anticipated from another offense which is relevant conduct to the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment. *See id.* at 43–48. He states that while sentences imposed at different times normally run consecutively, this should not apply to state sentences which have not yet been imposed. *Id.* Petitioner contends that the Bureau is expected to consider the state court's

---

[1] Judge Minaldi died before Petitioner submitted his Barden letter.

determination that the sentences should be concurrent and that imposing a consecutive sentence by presumption or through a non-sentencing judge's recommendation is contrary to case law, to the current views of the criminal justice system, and to the preference and order of the Louisiana state court. *Id.*

**II.     The Respondent's Motion to Dismiss and the Petitioner's Reply**

The Respondent filed a motion to dismiss stating that while Petitioner failed to exhaust his administrative remedies, the petition should be denied on the merits. Docket No. 12. The Respondent traced and agreed with Petitioner's representations concerning the history of the Petitioner's convictions. *See generally id.* Respondent noted, however, that in responding to the Barden letter, Judge Doughty observed that the state sentence which Petitioner received was not relevant conduct to the federal offense, had no bearing or impact on the sentencing guidelines for the federal sentence, involved separate victims, and was already pending at the time of Petitioner's federal indictment. *Id.* at 4.

The Respondent explained that under 18 U.S.C. § 3584(a), multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that they run consecutively, while multiple terms of imprisonment imposed at separate times run consecutively unless the court orders that they run concurrently. *See* Docket No. 12 at 6–16. Respondent maintained that only the federal district court can decide whether a federal sentence runs concurrently or consecutively with a state sentence which has not yet been imposed, but the sentences are presumed to be consecutive unless the court specifies that they are concurrent. *See id.* (primarily relying on *Setser v. United States*, 566 U.S. 231 (2012)).

The Respondent stated that under Bureau of Prisons Program Statement 5160.05, the designation for concurrent service of sentence is made only when it is consistent with the intent of

Page **4** of **17**

the federal sentencing court or the goals of the criminal justice system. *Id.* at 9–10, 18. Where a federal sentence is imposed before a state sentence, and the sentences are intended to run concurrently, the Bureau of Prisons may indirectly award credit for the time served in the state prison by designating *nunc pro tunc* the state prison as the place in which the prisoner serves a portion of his federal sentence. *See Pierce v. Holder*, 614 F.3d 158, 160 (5th Cir. 2010).

According to the Respondent, the Bureau conducted a thorough review of Petitioner's request for a *nunc pro tunc* designation of the Louisiana prison as the place of service of a portion of his federal sentence. Docket No. 12 at 20; *see also e.g.*, Docket No. 12-1 at 1–9 (¶¶ 14–21, 32, 34, 35), 34–58. While Petitioner argued that the Bureau abdicated its statutory authority by delegating its responsibility to a non-sentencing judge, the Respondent maintained that it is the court, not the Bureau, which determines whether sentences are consecutive or concurrent. *See e.g.*, Docket No. 12 at 9–13. The Respondent also stated that contacting the chief judge of the Western District was proper because the sentencing judge had died and Rule 25(b) of the Federal Rules of Criminal Procedure provides that any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial is unable to do so because of absence, sickness, death, or other disability. *Id.* at 22.

In his response to the motion to dismiss, Petitioner argued that *Setser* only applies at or during the sentencing phase and does not apply retroactively. *See e.g.*, Docket No. 13 at 11–30. He contended that a state sentence which has not yet been imposed does not qualify as a "multiple term of imprisonment" and the state court's ordering the sentences to be concurrent made him even more eligible for a *nunc pro tunc* designation. *See id.*

Petitioner further asserted that the contacting of Judge Doughty was improper because at the time that Judge Minaldi took a leave of absence in 2014, Judge Doughty was not on the federal

Page **5** of **17**

bench but was instead a state district judge in Louisiana. *Id.* at 32–38. Petitioner stated that Judge Doughty could not be the lawful successor because he did not succeed Judge Minaldi and does not sit in the same division. *Id.*

Petitioner further contended that the Bureau did not give his request a thorough review but instead relied entirely on the recommendation of a non-sentencing judge and did not consider his rehabilitative efforts. *Id.* at 38–45.[2]

### III. The Report of the Magistrate Judge

Upon review of the pleadings, the Magistrate Judge stated that Petitioner's habeas corpus petition sought review of the Bureau of Prisons' denial of his request for a *nunc pro tunc* designation of the state prison as the place of service of his federal sentence, effectively making his sentences concurrent. Docket No. 18 at 11. The Magistrate Judge stated that multiple terms of imprisonment are presumed to run consecutively unless the court specifies otherwise, and a consecutive sentence may be imposed even if the defendant has not yet been sentenced in state court. *Id.*

The Magistrate Judge rejected Petitioner's contention that the Bureau of Prisons improperly contacted Judge Doughty, citing Federal Rule of Criminal Procedure 25. *Id.* at 12–13. The Magistrate Judge relied on a worksheet listing the factors under § 3621 to show that the Board considered the factors under § 3621 in reviewing Petitioner's request. *Id.* at 13 (citing Docket No. 12-1 at 58). Specifically, the Magistrate Judge noted that the Bureau considered that Petitioner's state and federal charges were unrelated under Factor 2 and the court's recommendation of a consecutive sentence under Factor 4. *Id.* The Magistrate Judge also considered that Factors 1 and 3 were in Petitioner's favor because Factor 1 stated that Petitioner had a security level of low at FCI-

---

[2] Petitioner also filed a motion for summary judgment essentially repeating the arguments in his petition. *See* Docket No. 15.

Page **6** of **17**

Texarkana and Factor 3 stated that Petitioner had no other convictions and no disciplinary history in the institution. *Id.*

The Magistrate Judge stated that the Bureau's decision in this regard is entitled to substantial deference and can be overturned only upon a showing of abuse of discretion. *Id.* Upon review of the pleadings and documents in the record, the Magistrate Judge concluded that Petitioner failed to show an abuse of discretion on the part of the Bureau. *Id.* The Magistrate Judge noted particularly that Petitioner's state offense was not relevant conduct to his federal conviction and unrelated crimes ordinarily receive distinct punishments. *Id.* at 13–14. The Magistrate Judge further concluded that the record showed the Bureau considered all the § 3621(b) factors and that the state court's determination that the state sentence should run concurrently with the federal sentence is not binding on the United States. *Id.* at 14–15. The Magistrate Judge recognized Petitioner's "commendable efforts at rehabilitation" and stated that his record of achievements was "impressive," but concluded that in the absence of a showing of abuse of discretion, Petitioner's habeas corpus petition lacked merit. *Id.* at 15.

## ANALYSIS

Petitioner filed objections to the Magistrate Judge's Report and Recommendations (Docket No. 21), to which Respondent responded (Docket No. 22). Petitioner subsequently filed a reply. Docket No. 23. The Court addressed each objection in turn.

**I.     Petitioner's (Corrected) First Objection[3]**

Plaintiff's first objection states that the Magistrate Judge erred in concluding that under federal law, multiple terms of imprisonment imposed at different times are presumed to run

---

[3] Petitioner submitted a correction version of his first numbered objection, which is post-marked on July 26, 2024. Docket No. 20-1. Even though the Court received the correction first, it appears to have been sent three days after Petitioner's six-objection submission, which is post-marked on

consecutively unless the district court orders that they run concurrently. Docket No. 20 at 2; *see also* Docket No. 23 at 1–6. He concedes that while the Fifth Circuit said this in *Hunter v. Tamez*, 622 F.3d 427, 431 (5th Cir. 2010) and *Potoski v. Fox*, 583 F.App'x 396, 397 (5th Cir. 2014), Petitioner argues that these cases relied on *Free v. Miles*, 333 F.3d 550, 553 (5th Cir. 2003), in which the defendant was already serving a state term of imprisonment when a federal sentence was subsequently imposed. *Id.* However, Petitioner argues that this scenario is reversed in his case. *Id.*

While the scenario involving the state sentence preceding the federal sentence may have been true in *Free*, the record shows that in *Hunter*, the appellant received an 87-month sentence in federal court on February 11, 2004, and then a four-year sentence in state court on June 28, 2004, which the state judge specified was to be concurrent with his federal sentence. *Hunter*, 622 F.3d at 429. The appellant sought a *nunc pro tunc* designation of the state facility as the place of service of his federal sentence and the Bureau sent the sentencing judge a Barden letter. *Id.* The judge responded that he had no opinion as to whether the sentence should be consecutive or concurrent. *Id.* Subsequently the Bureau, after considering the § 3621(b) factors, denied the *nunc pro tunc* designation. *Id.* The Fifth Circuit rejected the appellant's claim that the Bureau was required to give effect to the state court's express intention that the sentence run concurrently and stated that the appellant was effectively sentenced to a consecutive sentence because he was sentenced at different times and the federal court did not specify a concurrent sentence. *Id.* at 430.

Similarly, in *Potoski*, the Fifth Circuit explained that the Bureau "correctly presumed from the district court's not specifying a concurrent sentence that it intended to impose a consecutive

---

July 23, 2024. Docket No. 21-2. The corrections appear to be minimal and have been considered by the Court.

sentence," in a situation where the federal sentence was imposed prior to the state sentence. *Potoski*, 583 F.App'x at 397.[4] This makes clear that the failure to specify a concurrent sentence permitted the Bureau to presume that a consecutive sentence was intended. The fact that *Free* may have involved a different set of facts is irrelevant as the Magistrate Judge did not rely on *Free*. Petitioner's objection on this point is without merit.

Petitioner also asserts that the presumption "is no longer applicable in the given scenario because the Supreme Court has explicitly prohibited it in *Setser v. United States*, 566 U.S. 231 (2012)." Docket No. 20 at 2; *see also* Docket No. 21 at 9–10. Petitioner also refers to *Pope v. Perdue*, 889 F.3d 410 (7th Cir. 2017) for this contention. Docket No. 20 at 2. In *Pope*, the district court did not assert a position pertaining to retroactive concurrent designation, and the Bureau presumed from this silence that the sentence should run consecutively. *Pope*, 889 F.3d at 417. The Seventh Circuit stated that "the Supreme Court has explicitly prohibited the BOP from drawing this inference for defendants who—like Pope—had not received their state sentence when their federal sentence was imposed." *Id.* (citing *Setser*, 566 U.S. at 239).

By contrast, as noted above, the Fifth Circuit stated in *Potoski* that "the federal district court had the discretion to order Potoski's federal sentence to run concurrently to his then-anticipated state sentence, and the BOP correctly presumed from the district court's not specifying a concurrent sentence that it intended to impose a consecutive sentence." *Potoski*, 583 F.App'x at 397 (citing *Setser* and 18 U.S.C. § 3584(a)). This Court need not consider the question of whether *Pope* and *Potoski* are in conflict because this Court is bound by the decisions and precedent of the Fifth

---

[4] Moreover, in *Potoski* the Fifth Circuit held that "the state court's designation that Potoski's state sentence was to run concurrently with the federal sentence did not have any bearing on the district court's judgment and is irrelevant to the BOP's computation." 583 F. App'x at 397.

Circuit, not the Seventh Circuit. *See* 28 U.S.C. § 41; *Continental Airlines Inc. v. American Airlines Inc.*, 824 F.Supp. 689, 710 (S.D. Tex. 1993). This objection is without merit.

Petitioner argues that "the inapplicability of § 3584(a)'s last sentence is further shown by the Supreme Court when it urged *Setser* to use the Bureau of Prison's procedure." Docket No. 20 at 2. He asks "if § 3584(a) would have disqualified *Setser*, why did the Supreme Court invoke the Bureau's procedure as a remedy?" *Id.* Petitioner, however, overlooks the fact that in *Setser*, the appellant had a 151-month federal sentence, to be run concurrently with one state sentence and consecutively with another. 566 U.S. at 233. Because the sentencing (federal) court in *Setser* specifically ordered a concurrent sentence, the last sentence in § 3584 did not apply. *See id.* at 239–40.

As the Respondent correctly states, Petitioner is misreading *Setser*. That case held that the authority to order a federal sentence concurrent with or consecutive to any other sentence rests with the sentencing court, not the Bureau of Prisons. *See id.* at 240–41. The Supreme Court also observed that judges have long been understood to have discretion to impose consecutive or concurrent sentences with respect to other sentences they impose or that have been imposed in other proceedings, including state proceedings, and that "a large majority of the federal appellate courts addressing the question have recognized a similar authority in the context here, where a federal judge anticipates a state sentence that has not yet been imposed." *Id.* at 236–37. The Court went on to say that "we find nothing in the Sentencing Reform Act, or in any other provision of law, to show that Congress foreclosed the exercise of district courts' sentencing discretion in these circumstances." *Id.* Thus, what happened here—the designation of a federal sentence to run consecutively with a not yet imposed state sentence—is within the sentencing discretion of the district court. *Se id.* Petitioner's objection in this regard is without merit.

Similarly, Petitioner argues that under *Setser*, a district court is permitted to "forebear" its determination of whether a sentence should be concurrent or consecutive to a later imposed state sentence. Docket No. 21 at 10. Petitioner interprets *Setser* to mean that a court's silence does not expressly mean that it intended for a consecutive sentence to be implemented. *See id.* As stated above, *Potoski* held that the Bureau of Prisons is correct in presuming a consecutive sentence where a concurrent sentence is not specified. In any event, as happened in this case, the Bureau commonly contacts the sentencing court with a Barden letter to inquire as to intent regarding the consecutive or concurrent nature of the sentence. Petitioner's objection in this regard shows no basis upon which to reject the Magistrate Judge's Report.

**II.    Petitioner's Second Objection**

In his second numbered objection, Petitioner says that the Bureau abused its discretion by "placing the full weight of the outcome solely on Chief Judge Doughty's indication." Docket No. 21 at 11.[5] He points to allegedly mandatory language in the Barden letter, arguing that this shows the Bureau eliminated any other facts from consideration:

> Should the Court indicate the sentence is to run concurrently with the state term, the Bureau will commence the sentence in the above judgment on a date which would result in the satisfaction of his federal sentence, and the release from Bureau custody of Mr. Sonnier. Should the Court indicate the sentence is to run consecutively to the state term, he will continue to a current projected release date of May 28, 2031.

Docket No. 12-1 at 52; *see also* Docket No. 21 at 11.

While Petitioner argues that this paragraph shows that the Bureau relied exclusively on the sentencing court's determination, upon a *de novo* review of the record, the Court finds the Magistrate Judge properly concluded that the Bureau reviewed all the § 3621(b) factors, including but not limited to the sentencing court's determination, in denying Petitioner's request for a

---

[5] Similar arguments are made in Petitioner's reply. *See e.g.*, Docket No. 23 at 9–10.

retroactive designation. *See* Docket No. 18 at 13–15. Petitioner has failed to show the Bureau abused its discretion and his objection on this point is without merit.

### III.     Petitioner's Third Objection

Petitioner's third objection asserts that Judge Doughty was not the sentencing judge and in fact was not even a member of the court which imposed the sentence during the Bureau's solicitation of how he would prefer to run the sentence. Docket No. 21 at 11–13; *see also* Docket No. 23 at 6–10. Petitioner explains that Judge Doughty was assigned to the Monroe Division of the Western District of Louisiana, whereas the sentence was imposed in the Lake Charles Division of that court. Docket No. 21 at 12. As he did in his petition, Petitioner cites the Ninth Circuit's decision in *Rodriguez v. Copenhaver*, 823 F.3d 1238, 1242 (9th Cir. 2016) as saying it was improper for the Bureau to rely on a letter from a judge who was not the sentencing judge. *Id.* at 12–13.

The Magistrate Judge correctly observed that the sentencing judge, Patricia Minaldi, had died, and so the Bureau contacted the Chief Judge of the Western District of Louisiana. Docket No. 18 at 3–4. Rule 25 provides that after a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability. FED. R. CRIM. P. 25. The Magistrate Judge stated that the phrase "the court's duties" included answering the Bureau's inquiry concerning the consecutive or concurrent nature of the sentence. Docket No. 18 at 12–13 (referring to *United States v. Dowd*, 451 F.3d 1244, 1256 (11th Cir. 2006) and *United States v. Bourgeois*, 950 F.2d 980, 988 (5th Cir. 1992)).

The fact that the Chief Judge of the Western District of Louisiana sat in a different division of that court than the division in which Petitioner was sentenced does not mean that the Chief Judge was not "a judge regularly sitting in or assigned to" the sentencing court. The term "that court"

refers to the Western District of Louisiana, not a division within that district; divisional venue was abolished by the Judicial Improvements and Access to Justice Act of 1988, Public Law No. 100-702, Title X, § 1001 (a) (102 Stat. 4664, November 19, 1988). *See Smith v. Michels Corp.*, Civil Action No. 2:13-cv-185, 2013 WL 4811227, at *2 (E.D. Tex., Sept. 9, 2013).

In *Rodriguez*, the appellant was arrested in Miami, Florida on state charges, and had been on parole from a previous state conviction at the time of the arrest. 823 F.3d at 1240. A month after his arrest, he appeared in federal court in the Southern District of Florida on firearms charges as well as an assault on a federal judge stemming from a home invasion robbery. *Id.* Acting Chief Judge Edward Davis of the Southern District of Florida had previously recused all the judges in that district from the case because the alleged victim of the home invasion robbery was a fellow judge of that court. *Id.*

Because all the judges in the Southern District had been recused, the Chief Judge of the Eleventh Circuit appointed Judge Robert Propst from the Northern District of Alabama to preside over Rodriguez's case in the Southern District of Florida. *Id.* Rodriguez was convicted of the firearms charges and received a sentence of 272 months, which sentence was silent about whether it should run concurrently or consecutively with the yet to be imposed state sentences. *Id.* About three years after Rodriguez finished serving his state sentences, he entered the custody of the Federal Bureau of Prisons. *Id.*

Rodriguez sought a *nunc pro tunc* designation of the Florida facility for service of his federal sentence. *Id.* at 1240–41. The Bureau wrote to Judge Propst to solicit his opinion on whether the federal sentence should be consecutive or concurrent but mailed to the letter to the Southern District of Florida, rather than to Judge Propst's court in Alabama. *Id.* at 1241. Rather than forwarding the letter to Judge Propst, Chief Judge Federico Moreno replied to the letter

himself, despite the fact that he had been recused from the case. *Id.* Judge Moreno's letter said that he "strongly opposed" the request for a *nunc pro tunc* designation, opined that violent attacks upon federal judges should be "strongly sanctioned," and said that allowing Rodriguez to be released early was not only dangerous to the public but an insult to the victimized judge as well as the victims in the state case. *Id.*

When Rodriguez sought relief under 28 U.S.C. § 2241, the district court held that it lacked jurisdiction to review an individual discretionary denial of a *nunc pro tunc* designation because 18 U.S.C. § 3625 specifically exempts § 3621 decisions from judicial review.[6] *Id.* at 1241–42. The Ninth Circuit reversed that determination, stating that "although a district court has no jurisdiction over discretionary designation decisions, it does have jurisdiction to decide whether the Bureau of Prisons acted contrary to established federal law, violated the Constitution, or exceeded its statutory authority when it acted pursuant to 18 U.S.C. § 3621." *Id*. at 1242.

With regard to the merits of the claim, the Ninth Circuit said that § 3621(b) directs the Bureau to consider statements from the court which imposed the sentence, which was "a direction to the Bureau of Prisons to consider statements made by the sentencing judge to determine the judge's intent and reasoning imposed on the particular defendant." *Id.* The court also noted Federal Bureau of Prisons Program Statement No. 5160.06, which set forth the procedures to follow "[w]hen the original sentencing judge is no longer available and the assigned judge offers no opinion." *Id.* The Ninth Circuit determined that the Bureau of Prisons erred in considering Chief

---

[6] The Magistrate Judge in the present case rejected this view, determining that the Court had jurisdiction to review the denial of a *nunc pro tunc* designation under an abuse of discretion standard. Docket No. 18 at 12 (citing *Rodriguez v. Pitzer*, 76 F.App'x 519, 520 (5th Cir. 2003) and *Lewis v. Warden, FCC Beaumont*, 819 F.App'x 211, 214 (5th Cir. 2020)).

Judge Moreno's letter because he was not the judge who imposed the sentence and had been recused from the case and should not have participated in it in any way. *Id.* at 1242–43.

The Ninth Circuit's opinion makes clear that the critical fact in this case was the recusal, not merely that Chief Judge Moreno was not the sentencing judge. *Id.* In addition, there was no showing that the sentencing judge, Judge Propst, was unavailable. *Id.* The fact that the Bureau of Prisons has a program statement setting out procedures to follow when the original sentencing judge is not available demonstrates that the unavailability of the original sentencing judge is not an automatic bar to consideration of the assigned judge's opinion, when one is offered. *See id.* Accordingly, Petitioner's reliance on *Rodriguez* is misplaced and his objection on this point is without merit.

### IV. Petitioner's Fourth Objection

In his fourth numbered objection, Petitioner again asserts that the Bureau of Prisons erred in contacting Judge Doughty because Judge Doughty was assigned to the Monroe Division rather than the Lake Charles Division and Judge Doughty succeeded Judge Robert James on the bench and not Judge Minaldi. Docket No. 21 at 13–15. As previously noted, divisional venue has been abolished and Judge Doughty, as Chief Judge of the Western District of Louisiana, properly acted as successor to Judge Minaldi. *See supra* Section III. This objection is without merit.

### V. Petitioner's Fifth Objection

In his fifth objection, Petitioner asserts that he has a right under the Administrative Remedy Program to file an appeal of the Bureau of Prisons' decision, but he was prevented from doing so by the Central Office, which improperly told him that he had to file a grievance with the warden and then appeal this to the Regional Office prior to going to the Central Office. Docket No. 21 at 15; *see also* Docket No. 23 at 11. To the extent Petitioner is raising an alleged error in the prison

administrative remedy procedure as a ground for habeas corpus relief, the claim lacks merit because Petitioner lacks a protected liberty interest in the administrative remedy procedure. The Fifth Circuit has explained that a petitioner is not entitled to habeas relief on a claim "that the prison violated its regulations during the administrative remedy process" and that a prisoner "does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his satisfaction." *Staples v. Keffer*, 419 F.App'x 461, 463 (5th Cir. 2011), *citing Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). This objection is without merit.

## VI. Petitioner's Sixth Objection

In his sixth objection, Petitioner complains that the Magistrate Judge did not address the motion for partial summary judgment which he filed. Docket No. 21 at 16; *see also* Docket No. 23 at 11–12. He says that the Magistrate Judge erroneously said that it was 67 pages when in fact the motion is 28 pages and the memorandum brief in support is 31 pages. Docket No. 21 at 16. He also complains that the Magistrate Judge stated that motions for summary judgment are disfavored means of handling habeas petition, but that his is a motion only for partial summary judgment. *Id.*

Significantly, however, Petitioner did not object to the Magistrate Judge's conclusion that the motion for partial summary judgment essentially repeats the arguments presented in his petition. The claims raised in the motion include allegations that his grievances were not properly responded to, various personnel of the Bureau of Prison erred by contacting Chief Judge Doughty and relying entirely on his recommendation, various personnel of the Bureau of Prisons erred by not considering all the § 3621(b) factors, and ranking officials of the Bureau of Prisons failed to correct these errors. These claims were addressed in the Magistrate Judge's Report and Petitioner has not shown any errors in this Report. His objection on this point is without merit.

**CONCLUSION**

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Petitioner objected. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Petitioner's objections are without merit. It is accordingly

**ORDERED** that the Report of the Magistrate Judge (Docket No. 18) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Respondent's motion to dismiss (Docket No. 12) is **GRANTED** and the above-styled petition for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 4th day of September, 2024.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE